■ In the Matter of P-H FINE ARTS, LTD., et al., Petitioners, v NEW YORK STATE TAX APPEALS TRIBUNAL et al., Respondents. [642 NYS2d 232] —Mikoll, J. P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained assessments of sales and use taxes imposed under Tax Law articles 28 and 29.

In December 1988, the Department of Taxation and Finance (hereinafter the Department) issued petitioner P-H Fine Arts, Ltd. (hereinafter Fine Arts), a corporation engaged in the business of buying and selling of artwork, two notices of determination and demands for payment of sales and use taxes due.

Fine Arts is a wholly owned subsidiary of Penthouse International, Ltd. (hereinafter Penthouse).* The first notice assessed Fine Arts' sales tax liability for the period September 1, 1984 through August 31, 1987 as $302,893.92, plus penalty and interest. The second notice assessed an additional penalty of $1,560.90. The Department also issued like notices of determination and demands for payment of sales and use taxes due to petitioners Robert C. Guccione (hereinafter Guccione), Anthony J. Guccione and David J. Myerson, as officers of Fine Arts.

Petitioner Stepplong Corporation (hereinafter Stepplong) was incorporated in Delaware in February 1982 as a "shelf corporation" (i.e., an inactive corporation) by an attorney associated with the law firm of Lefrak, Newman & Myerson in anticipation of Federal legislation that would unfavorably modify then-existing tax laws, "grandfathering" the shelf corporation so that it could be activated later to operate under the old legislation. Stepplong was taken "off the shelf" in December 1983 to accommodate a transaction whereby, on December 30, 1983 and January 15, 1984, a dividend was declared by Penthouse Clubs International Establishment (hereinafter PCIE) and paid to its parent company, Penthouse. At the time of the two transactions, PCIE contributed $2,107,800 worth of artwork to Stepplong and in return Stepplong issued 10 shares of stock to PCIE. The transactions effecting the stock transfer were performed by Stepplong's sole director, Guccione.

In December 1988, the Department issued Stepplong a notice of determination and demand for payment of sales and use taxes due for the period of March 1, 1984 through May 31, 1984 in the sum of $173,893.50, plus penalty and interest. Similar notices and demands for payment were issued to Guccione, Anthony Guccione and Myerson as officers of Stepplong.

Fine Arts and Stepplong filed separate petitions for revision of the determination or for refund of sales and use taxes under Tax Law articles 28 and 29. After a consolidated hearing before an Administrative Law Judge (hereinafter ALJ), the ALJ upheld the notices of determination and demands for payment and denied the petitions. The ALJ found that Fine Arts was engaged in the business of buying and selling art, but was not entitled to the resale exclusion under Tax Law § 1105 (a) and § 1101 (b) (4) (i) since it did not prove that it purchased the artwork exclusively for resale. The ALJ concluded that the purchases of the artwork were subject to the sales and use tax.

---

* Penthouse has since changed its name to General Media, Inc. and Fine Arts has changed its name to General Media Fine Arts.

The ALJ held that the transfer of the artwork by PCIE to Stepplong for the issuance of stock by Stepplong was a sale as that term is defined in Tax Law § 1101 (b) (5). The ALJ reasoned that because Stepplong had been incorporated for nearly two years prior to the transfer of stock, Stepplong was not entitled to an exclusion pursuant to Tax Law § 1101 (b) (4) (former [iii] [D], now [iv] [D]), which excludes from the definition of retail sale the transfer of property to a corporation upon its organization in consideration for the issuance of its stock.

After review of objections filed by petitioners, the ALJ's determination was upheld by respondent Tax Appeals Tribunal. The Tribunal concluded that because Fine Arts failed to prove that it purchased the artwork exclusively for the purpose of resale, but rather that it was purchased for resale and use by Guccione and Penthouse, Fine Arts was not entitled to the resale exclusion. The Tribunal also ruled that the ALJ correctly held that the pertinent regulatory provisions implementing Tax Law § 1101 (b) (4) (former [iii] [D], now [iv] [D]) intended to equate organization with incorporation and affirmed the ALJ's determination as to Stepplong.

Petitioners then commenced this proceeding seeking annulment of the Tribunal's determination. The Tribunal's determination should be confirmed and the petition dismissed.

Petitioners' contention that the Tribunal erred in interpreting Tax Law § 1101 (b) (4) (i) (A) to require that Fine Arts had the burden of showing that each piece of the artwork had been purchased for only one purpose, resale, and that Fine Arts failed to so prove is not persuasive. The Tribunal's interpretation of this statutory provision must be upheld if it is neither irrational nor unreasonable (*see, Matter of Howard v Wyman,* 28 NY2d 434, 438; *Matter of Fannon & Osmond Photography v Commissioner of Taxation & Fin.,* 176 AD2d 1014, 1015, *lv denied* 79 NY2d 759).

Where the question is whether certain purchases are entitled to the resale exemption, the purchaser must show, to avoid imposition of the sales tax on the entire transaction, "that each of the [items] was purchased for one and only one purpose: resale" (*Matter of Savemart, Inc. v State Tax Commn.,* 105 AD2d 1001, 1002-1003, *appeal dismissed* 64 NY2d 1039, *lv denied* 65 NY2d 604; *see also, Matter of Micheli Contr. Corp. v New York State Tax Commn.,* 109 AD2d 957, 958). Accordingly, it cannot be said that the Tribunal's interpretation is irrational or unreasonable. Moreover, the record contains substantial evidence that the works of art were not purchased exclusively for

resale. Guccione's testimony indicated that he purchased the artwork to enhance his image as a publisher, as well as the image of his business, Penthouse. Accordingly, the Tribunal's determination imposing the tax should be confirmed.

Petitioners' argument that the Tribunal erred in ruling that the transfer of artwork from PCIE to Stepplong in exchange for issuance of Stepplong's common stock is excluded from sales tax is rejected. Tax Law § 1101 (b) (4) (former [iii] [D], now [iv] [D]) excludes from the definition of a retail sale "[t]he transfer of property to a corporation upon its organization in consideration for the issuance of its stock". Pursuant to 20 NYCRR 526.6 (d) (5), the term "organization" can properly be equated with "incorporation" (see, Matter of Noar Trucking Co. v State Tax Commn., 139 AD2d 869, 870-871). The transfer of the artwork to Stepplong occurred approximately two years subsequent to Stepplong's incorporation. Thus, the Tribunal's determination in this respect is not irrational or unreasonable. Petitioners' claim that it is unfair to interpret the term "organization" with "incorporation" when a shelf corporation is involved ignores the fact that petitioners freely chose to do business through an existing shelf corporation instead of forming a new corporate entity.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.